UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY BARROWS, | ) | |
| | ) | Case No. 12-CV-06063 |
| Plaintiff, | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| SONYA GYIMAH, RALPH BURKYBILE, | ) | |
| DONALD WILLIAMS, AND NELSON | ) | |
| HOLMAN, | ) | Jury Demanded |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| HENRY BARROWS, | ) | |
| | ) | Case No. 13-CV-01889 |
| Plaintiff, | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| WENDY OLSON-FOXON, et al., | ) | |
| | ) | Consolidated Under |
| Defendants. | ) | Case No. 12-CV-06063 |
| | ) | |

## AMENDED COMPLAINT

This is the Amended Complaint of Plaintiff Henry Barrows in Case No. 12-CV-06063 pursuant to 42 U.S.C. § 1983. In support of his Amended Complaint, Henry Barrows ("Henry") states as follows:

## JURISDICTION

This Amended Complaint (the "Complaint") is filed pursuant to 42 U.S.C. § 1983, commonly known as the Civil Rights Act, and jurisdiction of the Court is conferred by 28 U.S.C. § 1331.

## PARTIES

1. Plaintiff HENRY BARROWS, register No. B 82577, was at all relevant times an inmate at Stateville Correctional Center ("Stateville") located in Joliet, Illinois, in the Northern District of Illinois, and is presently confined in Pontiac Correctional Center, located in Pontiac, Illinois, in the Northern District of Illinois.

2. At all relevant times, Defendant Sgt. Sonya Gyimah ("Gyimah") was employed by the Illinois Department of Corrections (the "IDOC") as a guard at Stateville.

3. At all relevant times, Defendant Lt. Ralph Burkybile ("Burkybile") was employed by the IDOC as an officer at Stateville.

4. At all relevant times, Defendant Lt. Nelson Holman ("Holman") was employed by the IDOC as an officer at Stateville.

5. At all relevant times, Defendant Sgt. Donald Williams ("Williams") was employed by the IDOC as an officer at Stateville.

6. All defendants are sued in their individual capacities.

## FACTS COMMON TO ALL CLAIMS

7. On or about April 20 through April 26, 2011, Gyimah was employed by the IDOC and working in her capacity as an officer at Stateville.

8. On or about April 20 through April 26, 2011, Holman was employed by the IDOC and working in his capacity as an officer at Stateville.

9. On or about April 20 through April 26, 2011, Burkybile was employed by the IDOC and working in his capacity as an officer at Stateville.

10. On or about April 20 through April 26, 2011, Williams was employed by the IDOC and working in his capacity as an officer at Stateville.

11. Upon information and belief, Henry was involved in physical confrontations with one of more of the defendants prior to the events at issue.

12. At all relevant times, Henry was diagnosed as having schizoaffective disorder and bipolar disorder, and was prescribed multiple medications, including Depakote E.C., Risperdal, Trazadone, and Klonopin, for his conditions by members of the Stateville medical staff. Schizoaffective disorder and bipolar disorder result in a higher incidence of suicide among those diagnosed with them than the public at large.

13. Prior to the events at issue, Henry threatened suicide multiple times, dating back as early as 2004. Upon information and belief, at all relevant times, the defendants knew or reasonably should have known about Henry's medical conditions, his threats to commit suicide, and his previous self-inflicted injuries of a suicidal nature.

14. Upon information and belief, Henry spent at least 28 out of the 60 days immediately prior to April 20, 2011 on crisis watch.

15. On or about April 20, 2011, Henry requested that Gyimah arrange for Henry to be seen by a psychiatric doctor. Gyimah refused to alert a psychological doctor pursuant to Henry's request and instructed Henry to "[k]ill yourself and stop talking about it."

16. On or about April 20, 2011, because Gyimah refused to alert a psychological doctor pursuant to Henry's request, Henry inflicted a laceration on his left wrist.

17. On or about April 20, 2011, after self-inflicting a laceration on his left wrist, Henry was seen by a medical technician, Chanel Barnett, who administered first aid to Henry, and he was then placed back in his cell without having been seen by a crisis team member or mental health staff member.

18. On or about April 20, 2011, because he was placed back in his cell without being seen by a crisis team member or mental health staff member, Henry inflicted a second laceration on his left wrist.

19. On or about April 20, 2011, Gyimah was aware that Henry inflicted a second laceration on his left wrist and again refused to alert a psychological doctor or crisis team member.

20. On or about April 20, 2011, after becoming aware that Henry had inflicted a second laceration to his left wrist, Holman asked Gyimah whether Henry would be taken to the Health Care Unit (the "HCU"), to which Gyimah responded "I'd let him keep cutting, he's only hurting himself." Neither Gyimah nor Holman alerted a crisis team member, mental health staff member or psychological doctor at this time.

21. On or about April 20, 2011, because his repeated requests to be seen by a crisis team member or mental health staff member were rejected, and after he had inflicted two lacerations on his left wrist, Henry started a fire in his cell.

22. On or about April 20, 2011, after starting a fire in his cell, Henry was taken to the HCU, the fire in his cell was extinguished, and his left wrist was bandaged for a second time. After his left wrist was bandaged for a second time, Henry was placed back in his cell without having seen a medical doctor, crisis team member or mental health staff member.

23. Sometime after April 20, 2011, Henry filed a grievance with the IDOC concerning the above-mentioned events.

24. On or about April 21, 2011, Henry informed Burkybile that he was feeling self-injurious and requested to be seen by a crisis team member. Burkybile refused to alert a crisis team member pursuant to Henry's request.

25. On or about April 21, 2011, after Burkybile refused to alert a crisis team member pursuant to his request, Henry wrapped his arm in toilet paper and ignited it, causing his arm to catch fire.

26. On or about April 21, 2011, after Henry set fire to his arm, Gyimah and Burkybile entered Henry's cell and extinguished the self-inflicted fire on Henry's arm. Henry was then seen by a medical technician, who applied a cream to the 2nd degree burns Henry suffered. Neither Gyimah nor Burkybile alerted a crisis team member, psychological doctor or mental health staff member concerning Henry's actions, despite Henry's repeated requests to do so and his self-injurious behavior of a suicidal nature.

27. On or about April 21, 2011, after being seen by a medical technician for 2nd degree burns to his arm, Henry was placed back in his cell without having been seen by a medical doctor, crisis team member, or mental health staff team member.

28. On or about April 21, 2011, Henry was left in his cell all night without being seen by a medical doctor, crisis team member, or mental health staff member, despite having 2nd degree burns on his arm. Henry's arm was blistered, discolored, and excreting pus. Henry suffered from chills, fever, and profuse sweating throughout the night.

29. Sometime after April 21, 2011, Henry filed a grievance with the IDOC concerning the above-mentioned events.

30. On or about April 26, 2011, Henry requested Williams alert a crisis team member because Henry was feeling self-injurious, depressed and suicidal. Williams refused to alert a crisis team member.

31. On or about April 26, 2011, because Williams refused to alert a crisis team member, Henry set his arm on fire for a second time within a week.

5

32. On or about April 26, 2011, after setting his arm on fire for the second time in a week, Henry was again denied medical care. Henry was not seen by any medical staff member until the next morning and still no crisis team member or mental health staff member was alerted concerning Henry's actions.

33. Sometime after April 26, 2011, Henry filed a grievance with the IDOC concerning the above-mentioned events.

34. On or about April 27, 2011, Henry was finally seen by a medical doctor.

35. On or about April 27, 2011, Henry was finally referred to and seen by a psychological doctor.

36. Henry has exhausted his administrative means for seeking redress for the above-mentioned deprivation of his civil rights.

## COUNT I
## CRUEL AND UNUSUAL PUNISHMENT
## SGT. SONYA GYIMAH

37. Henry re-alleges paragraphs 1-34 as if fully set forth herein.

38. At all relevant times, Gyimah was employed by IDOC and acting in her capacity as an officer at Stateville.

39. At all relevant times, Gyimah had a duty to perform the tasks mandated of a person in her position, including notifying a crisis team member and/or psychological doctor in the event an inmate injures, or threatens to injure, himself in a manner which suggests suicidal intention, as proscribed by the Eighth Amendment to the United States Constitution.

40. At all relevant times, Gyimah had a duty to perform the tasks mandated of a person in her position, including notifying medical staff when an inmate is in need of medical care, as proscribed by the Eighth Amendment to the United States Constitution.

41. At all relevant times, Gyimah was reasonably aware of her above-mentioned duties.

42. Gyimah deliberately and unreasonably refused to perform her duties as fully described herein, including, but not limited to, deliberately refusing to alert crisis team members and deliberately refusing to alert medical staff despite Henry's repeated requests to be seen by a psychological doctor and/or medical staff member, and his repeated oral declarations he was experiencing suicidal, self-injurious, and depressed thoughts.

43. Gyimah's deliberate and unreasonable refusal to perform her duties directly resulted in Henry committing the self-injurious acts fully described herein and constitutes deliberate indifference to Henry's health and safety, the imminent risk he would harm himself in a suicidal manner, and constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

44. As a direct and proximate result of Gyimah's misconduct, Henry suffered deprivation of his constitutional rights.

WHEREFORE, Plaintiff Henry Barrows demands judgment against Defendant Sonya Gyimah and damages in the amount of $50,000, as well as any additional remedies the Court deems necessary and proper.

## COUNT II
## CRUEL AND UNUSUAL PUNISHMENT
## LT. RALPH BURKYBILE

45. Henry re-alleges paragraphs 1-34 as if fully set forth herein.

46. At all relevant times, Burkybile was employed by IDOC and acting in his capacity as an officer at Stateville.

47. At all relevant times, Burkybile had a duty to perform the tasks mandated of a person in his position, including notifying a crisis team member and/or psychological doctor in the event an inmate injures, or threatens to injure, himself in a manner which suggests suicidal intention, as proscribed by the Eighth Amendment to the United States Constitution.

48. At all relevant times, Burkybile had a duty to perform the tasks mandated of a person in his position, including notifying medical staff when an inmate is in need of medical care, as proscribed by the Eighth Amendment to the United States Constitution.

49. At all relevant times, Burkybile was reasonably aware of his above-mentioned duties.

50. Burkybile deliberately and unreasonably refused to perform his duties as fully described herein, including, but not limited to, deliberately refusing to alert crisis team members and deliberately refusing to alert medical staff despite Henry's repeated requests to be seen by a psychological doctor and/or medical staff member, and his repeated oral declarations he was experiencing suicidal, self-injurious, and depressed thoughts.

51. Burkybile's deliberate and unreasonable refusal to perform his duties directly resulted in Henry committing the self-injurious acts fully described herein and constitutes deliberate indifference to Henry's health and safety, the imminent risk he would harm himself in a suicidal manner, and his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

52. As a direct and proximate result of Burkybile's misconduct, Henry suffered deprivation of his constitutional rights.

WHEREFORE, Plaintiff Henry Barrows demands judgment against Defendant Ralph Burkybile and damages in the amount of $50,000, as well as any additional remedies the Court deems necessary and proper.

## COUNT III
## CRUEL AND UNUSUAL PUNISHMENT
## LT. DONALD WILLIAMS

53. Henry re-alleges paragraphs 1-34 as if fully set forth herein.

54. At all relevant times, Williams was employed by IDOC and acting in his capacity as an officer at Stateville.

55. At all relevant times, Williams had a duty to perform the tasks mandated of a person in his position, including notifying a crisis team member and/or psychological doctor in the event an inmate injures, or threatens to injure, himself in a manner which suggests suicidal intention, as proscribed by the Eighth Amendment to the United States Constitution.

56. At all relevant times, Williams had a duty to perform the tasks mandated of a person in his position, including notifying medical staff when an inmate is in need of medical care, as proscribed by the Eighth Amendment to the United States Constitution.

57. At all relevant times, Williams was reasonably aware of his above-mentioned duties.

58. Williams deliberately and unreasonably refused to perform his duties as fully described herein, including, but not limited to, deliberately refusing to alert crisis team members and deliberately refusing to alert medical staff despite Henry's repeated requests to be seen by a psychological doctor and/or medical staff member, and his repeated oral declarations he was experiencing suicidal, self-injurious, and depressed thoughts.

9

59. Williams' deliberate and unreasonable refusal to perform his duties directly resulted in Henry committing the self-injurious acts fully described herein and constitutes deliberate indifference to Henry's health and safety, the imminent risk he would harm himself in a suicidal manner, and his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

60. As a direct and proximate result of Williams' misconduct, Henry suffered deprivation of his constitutional rights.

WHEREFORE, Plaintiff Henry Barrows demands judgment against Defendant Donald Williams and damages in the amount of $50,000, as well as any additional remedies the Court deems necessary and proper.

## COUNT IV
## CRUEL AND UNUSUAL PUNISHMENT
## SGT. NELSON HOLMAN

61. Henry re-alleges paragraphs 1-34 as if fully set forth herein.

62. At all relevant times, Holman was employed by IDOC and acting in his capacity as an officer at Stateville.

63. At all relevant times, Holman had a duty to perform the tasks mandated of a person in his position, including notifying a crisis team member and/or psychological doctor in the event an inmate injures, or threatens to injure, himself in a manner which suggests suicidal intention, as proscribed by the Eighth Amendment to the United States Constitution.

64. At all relevant times, Holman had a duty to perform the tasks mandated of a person in his position, including notifying medical staff when an inmate is in need of medical care, as proscribed by the Eighth Amendment to the United States Constitution.

65. At all relevant times, Holman was reasonably aware of his above-mentioned duties.

66. Holman deliberately and unreasonably refused to perform his duties as fully described herein, including, but not limited to, deliberately refusing to alert crisis team members and deliberately refusing to alert medical staff despite Henry's repeated requests to be seen by a psychological doctor and/or medical staff member, and his repeated oral declarations he was experiencing suicidal, self-injurious, and depressed thoughts.

67. Holman's deliberate and unreasonable refusal to perform his duties directly resulted in Henry committing the self-injurious acts fully described herein and constitutes deliberate indifference to Henry's health and safety, the imminent risk he would harm himself in a suicidal manner, and his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

68. As a direct and proximate result of Holman's misconduct, Henry suffered deprivation of his constitutional rights.

WHEREFORE, Plaintiff Henry Barrows demands judgment against Defendant Nelson Holman and damages in the amount of $50,000, as well as any additional remedies the Court deems necessary and proper.

Respectfully Submitted,

By: /s/ Brendan P. McGarry
One of his attorneys

David A. Genelly (Atty. No. 0932663)
Brendan P. McGarry (Atty. No. 6290175)
VANASCO GENELLY & MILLER
*Court Appointed Attorneys for Henry Barrows*
33 North LaSalle Street
Suite 2200
Chicago, Illinois 60602
(312)786-5100

# CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 23rd day of October, 2013, he electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the foregoing Amended Complaint of Plaintiff Henry Barrows, using the CM/ECF system, and notice of this filing will be sent to all parties electronically:

Christopher E. Walter
Assistant Attorney General
Office of the Attorney General
State of Illinois
General Law Bureau
100 West Randolph Street
13th Floor
Chicago, Illinois 60601
*Attorney for Defendants*


Eric D. Brandfonbrener
Perkins Coie LLP
131 South Dearborn Street
Suite 1700
Chicago, IL 60603
*Attorney for Henry Barrows in Case No. 13-CV-01889*

By:    /s/ Brendan P. McGarry