UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY BARROWS, | ) | |
| | ) | Case No. 12-CV-06063 |
| Plaintiff, | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| SONYA GYIMAH, *et al.*, | ) | |
| | ) | Jury Demanded |
| Defendants. | ) | |

| | | |
|---|---|---|
| HENRY BARROWS, | ) | |
| | ) | Case No. 13-CV-01889 |
| Plaintiff, | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| WENDY OLSON-FOXON, EDWARD | ) | |
| D. MATAKIEWICZ and JOHN COMBS, | ) | |
| | ) | Consolidated Under |
| Defendants. | ) | Case No. 12-CV-06063 |
| | ) | |

### FIRST AMENDED COMPLAINT AGAINST
### OLSON-FOXON, MATAKIEWICZ AND COMBS

This is the First Amended Complaint of Plaintiff Henry Barrows ("Plaintiff" or "Mr. Barrows") in Case No. 13-CV-01889, consolidated with case No. 12-CV-06063, against Defendants Wendy Olson-Foxon, Edward D. Matakiewicz and John Combs (collectively the "Defendants"), pursuant to 42 U.S.C. § 1983. In support of his First Amended Complaint, Mr. Barrows states as follows. Because an amended complaint has just been filed in Case No. 12-CV-06063, and to try to avoid confusion as these consolidated cases proceed, the following First Amended Complaint begins its numbered paragraphs and counts as if it were appended to the amended complaint in Case No. 12-CV-06063:

## JURISDICTION

69. This First Amended Complaint (the "Complaint") is filed pursuant to 42 U.S.C. § 1983, commonly known as the Civil Rights Act, and jurisdiction of the Court is conferred by 28 U.S.C. § 1331.

## PARTIES

70. Plaintiff Henry Barrows, register No. B 82577, was at all relevant times an inmate at Stateville Correctional Center ("Stateville") located in Joliet, Illinois, in the Northern District of Illinois, and is presently confined in Pontiac Correctional Center, located in Pontiac, Illinois, in the Northern District of Illinois.

71. At all relevant times, Defendant Wendy Olson-Foxon ("Ms. Olson-Foxon") was employed by the Illinois Department of Corrections (the "IDOC") as a medical technician at Stateville.

72. At all relevant times, Defendant Edward D. Matakiewicz ("Mr. Matakiewicz") was employed by the IDOC as an officer at Stateville.

73. At all relevant times, Defendant John Combs ("Mr. Combs") was employed by the IDOC as an officer at Stateville.

74. All defendants are sued in their individual capacities.

## FACTS COMMON TO ALL CLAIMS

75. On or about August 16, 2011, Ms. Olson-Foxon was employed by the IDOC and working in her capacity as a medical technician at Stateville.

76. On or about August 16, 2011, Mr. Matakiewicz was employed by the IDOC and working in his capacity as an officer at Stateville.

77. On or about August 16, 2011, Mr. Combs was employed by the IDOC and working in his capacity as an officer at Stateville.

78. Upon information and belief, Mr. Barrows had been involved in physical and verbal confrontations with one or more of the Defendants prior to August 16, 2011.

79. At all relevant times, Mr. Barrows was diagnosed as having schizoaffective disorder and bipolar disorder, and was prescribed multiple medications, including Depakote E.C., Risperdal, Trazadone, and Klonopin, for his conditions by members of the Stateville medical staff. Schizoaffective disorder and bipolar disorder result in higher incidence of suicide among those with these disorders as compared to the public at large.

80. Prior to the events at issue in this Complaint, Mr. Barrows had threatened suicide multiple times. Among other things, Mr. Barrows had a history of inflicting serious, potentially life threatening, harm on himself. Upon information and belief, Mr. Barrows had spent a large portion of 2011 on crisis watch, including days immediately prior to August 16, 2011.

81. Upon information and belief, the Defendants were aware of Mr. Barrows' mental illness and his history of both verbal and physical confrontations with guards and others at Stateville and of inflicting serious, potentially life threatening, harm on himself.

82. On or about August 16, 2011, Mr. Barrows requested that Mr. Matakiewicz and Mr. Combs arrange for Mr. Barrows to be seen by a crisis team member or other mental health professional because he told them that he was concerned that he would harm himself.

83. On or about August 16, 2011, after Mr. Matakiewicz and Mr. Combs failed to arrange for a crisis team or other mental health professional to attend to Mr. Barrows, Mr. Barrows set fire to his ankle.

84. On or about August 16, 2011, after Mr. Barrows set fire to his ankle, Mr. Matakiewicz and Mr. Combs entered Mr. Barrows's cell and saw the burn on Mr. Barrows's ankle.

85. On or about August 16, 2011, although Mr. Matakiewicz and Mr. Combs had seen that Mr. Barrows required medical attention, they failed to arrange for prompt medical care for Mr. Barrows.

86. On or about August 16, 2011 Mr. Barrows repeatedly asked for medical attention but did not receive any medical attention. He was left in his cell all night without being seen by a medical doctor, crisis team member, or mental health staff member, despite having burns on his ankle.

87 Finally, on or about August 17, 2011, Mr. Barrows was seen by Ms. Olson-Foxon who asked Mr. Barrows what had happened. However, after she was told that Mr. Barrows lit himself on fire, Ms. Olson-Foxon told Mr. Barrows that he did not need medical attention if he was going to be hurting himself. Mr. Barrows also asked Ms. Olson-Foxon what had happened to Mr. Barrrows' prior sick slips since he had not been provided with medical attention, Ms. Olson-Foxon explained that she had thrown those sick call slips away, preventing him from receiving medical attention.

88. On or about August 17, 2011, despite seeing that Mr. Barrows was burned, Ms. Olson-Foxon left Mr. Barrows in his cell and failed to provide any medical attention to Mr. Barrows and failed to arrange for prompt medical and mental health attention to him.

89. On or about August 17, 2011, Mr. Barrows was in pain caused by his burnt ankle, which had now developed a blister and was exuding puss.

90. On or about August 18, 2011, Mr. Barrows was finally taken to the health care unit where he received medical attention for his burned ankle.

91. On information and belief, Mr. Barrows filed a grievance with the IDOC concerning the above-mentioned events.

92. Mr. Barrows has exhausted his administrative means for seeking redress for the above-mentioned deprivation of his civil rights.

## COUNT V
### CRUEL AND UNUSUAL PUNISHMENT
### DEFENDANT OLSON-FOXON

93. Mr. Barrows re-alleges paragraphs 69-92 as if fully set forth herein.

94. At all relevant times, Ms. Olson-Foxon was employed by IDOC and acting in her capacity as a medical technician at Stateville.

95. At all relevant times, Ms. Olson-Foxon had a duty to perform the tasks mandated of a person in her position, including providing appropriate medical care, as proscribed by the Eighth Amendment to the United States Constitution.

96. At all relevant times, Ms. Olson-Foxon had a duty to perform the tasks mandated of a person in her position, including notifying medical staff when an inmate is in need of medical care and notifying a crisis team member and/or psychological doctor in the event an inmate injures, or threatens to injure, himself in a manner which suggests suicidal intention, as proscribed by the Eighth Amendment to the United States Constitution.

97. At all relevant times, on information and belief, Ms. Olson-Foxon was reasonably aware of her above-mentioned duties.

98. Ms. Olson-Foxon deliberately and unreasonably refused to perform her duties as fully described herein, including, but not limited to, deliberately refusing to provide medical

attention, refusing alert crisis team members, and deliberately refusing to alert medical staff despite Mr. Barrows' medical condition and despite his requests to be seen by a psychological doctor and/or medical staff member, and his repeated oral declarations he was experiencing self-injurious urges.

99. Ms. Olson-Foxon's deliberate and unreasonable refusal to perform her duties leaving Mr. Barrows to suffer in his cell as described herein constitutes deliberate indifference to Mr. Barrows' health and safety, the imminent risk he would further harm himself in a suicidal manner, and constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

100. As a direct and proximate result of Ms. Olson-Foxon's misconduct, Mr. Barrows suffered deprivation of his constitutional rights.

WHEREFORE, Mr. Barrows demands judgment against Ms. Olson-Foxon and damages in the amount of $50,000, as well as any additional remedies the Court deems necessary and proper.

## COUNT VI
## CRUEL AND UNUSUAL PUNISHMENT
## DEFENDANT MATAKIEWICZ

101. Mr. Barrows re-alleges paragraphs 69-92 as if fully set forth herein.

102. At all relevant times, Mr. Matakiewicz was employed by IDOC and acting in his capacity as an officer at Stateville.

103. At all relevant times, Mr. Matakiewicz had a duty to perform the tasks mandated of a person in his position, including notifying a crisis team member and/or psychological doctor in the event an inmate injures, or threatens to injure, himself in a manner which suggests suicidal intention, as proscribed by the Eighth Amendment to the United States Constitution.

104. At all relevant times, Mr. Matakiewicz had a duty to perform the tasks mandated of a person in his position, including notifying medical staff when an inmate is in need of medical care, as proscribed by the Eighth Amendment to the United States Constitution.

105. At all relevant times, Mr. Matakiewicz was reasonably aware of his above-mentioned duties.

106. Mr. Matakiewicz deliberately and unreasonably refused to perform his duties as fully described herein, including, but not limited to, deliberately refusing to alert crisis team members and deliberately refusing to alert medical staff despite Mr. Barrows's repeated requests to be seen by a psychological doctor and/or medical staff member, and his repeated oral declarations he was experiencing suicidal, self-injurious, and depressed thoughts.

107. Mr. Matakiewicz's deliberate and unreasonable refusal to perform his duties directly resulted in Mr. Barrows committing the self-injurious acts fully described herein and constitutes deliberate indifference to Mr. Barrows' health and safety, the imminent risk he would harm himself in a suicidal manner, and his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

108. As a direct and proximate result of Mr. Matakiewicz's misconduct, Mr. Barrows suffered deprivation of his constitutional rights.

WHEREFORE, Mr. Barrows demands judgment against Mr. Matakiewicz and damages in the amount of $50,000, as well as any additional remedies the Court deems necessary and proper.

## COUNT VII
## CRUEL AND UNUSUAL PUNISHMENT
## DEFENDANT COMBS

109. Mr. Barrows re-alleges paragraphs 69-92 as if fully set forth herein.

110. At all relevant times, Mr. Combs was employed by IDOC and acting in his capacity as an officer at Stateville.

111. At all relevant times, Mr. Combs had a duty to perform the tasks mandated of a person in his position, including notifying a crisis team member and/or psychological doctor in the event an inmate injures, or threatens to injure, himself in a manner which suggests suicidal intention, as proscribed by the Eighth Amendment to the United States Constitution.

112. At all relevant times, Mr. Combs had a duty to perform the tasks mandated of a person in his position, including notifying medical staff when an inmate is in need of medical care, as proscribed by the Eighth Amendment to the United States Constitution.

113. At all relevant times, Mr. Combs was reasonably aware of his above-mentioned duties.

114. Mr. Combs deliberately and unreasonably refused to perform his duties as fully described herein, including, but not limited to, deliberately refusing to alert crisis team members and deliberately refusing to alert medical staff despite Mr. Barrows' repeated requests to be seen by a psychological doctor and/or medical staff member, and his repeated oral declarations he was experiencing suicidal, self-injurious, and depressed thoughts.

115. Mr. Combs' deliberate and unreasonable refusal to perform his duties directly resulted in Mr. Barrows committing the self-injurious acts fully described herein and constitutes deliberate indifference to Mr. Barrows' health and safety, the imminent risk he would harm himself in a suicidal manner, and his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

116. As a direct and proximate result of Mr. Combs' misconduct, Mr. Barrows suffered deprivation of his constitutional rights.

WHEREFORE, Mr. Barrows demands judgment against Mr. Combs and damages in the amount of $50,000, as well as any additional remedies the Court deems necessary and proper.

Respectfully Submitted,

HENRY BARROWS

By: /s/ Eric D. Brandfonbrener
One of his attorneys

November 15, 2013

Eric D. Brandfonbrener, ARDC #6195674
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: (312) 324-8400
Facsimile: (312) 324-9400

*Court Appointed Attorneys for Henry Barrows*