IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY BARROWS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 6063 |
| | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | Judge Presiding |
| SONYA GYIMAH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| HENRY BARROWS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 1889 |
| | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | Judge Presiding |
| WENDY OLSON-FOXON, et al. | ) | |
| | ) | Consolidated Under |
| Defendants. | ) | No. 12 C 6063 |

| | | |
|---|---|---|
| HENRY BARROWS, | ) | |
| | ) | No. 12 C 4569 |
| Plaintiffs, | ) | |
| | ) | Honorable Virginia M. Kendall |
| | ) | Judge Presiding |
| | ) | |
| PERRY KIRK | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' RESPONSE TO MOTION TO COMPEL SETTLEMENT PAYMENT**

The Defendants, by and through their attorney, LISA MADIGAN, Attorney General of Illinois, for their Response to Motion to Compel Settlement Payment, states as follows:

I. **Introduction.**

A. **Background Facts.**

Plaintiff Henry Barrows is an inmate currently incarcerated in the Illinois Department of Corrections ("IDOC"). Plaintiff filed three separate actions alleging constitutional violations against IDOC employees pursuant to 42 U.S.C. § 1983: *Barrows v. Kirk*, 12 C 4569; *Barrows v. Gyimah, et al.*, 12 C 6063; and *Barrows v. Oslon Foxon, et al.*, 13 C 1889 (collectively, "the actions"). The actions were collectively referred for a settlement conference with Magistrate Judge Valdez. (12 C 4569, Dkt. 50; 12 C 6063, Dkt. 104; 13 C 1889, Dkt. 31). The settlement conference proceeded on June 29, 2015, and the parties reached a settlement agreement as to all three actions. (12 C 4569, Dkt. 58; 12 C 6063, Dkt. 111; 13 C 1889, Dkt. 37). On June 30, 2015, this Court dismissed the case pursuant to the Settlement. (12 C 4569, Dkt. 59; 12 C 6063, Dkt. 112; 13 C 1889, Dkt. 38). The settlement terms were reduced to writing and signed by the Plaintiff and his counsel in September 2015. The written Settlement Agreement is attached hereto as Exhibit A.

B. **Relevant Terms of the Settlement Agreement and Reinstatement of Case.**

The written Settlement Agreement is the standard form settlement agreement used in federal cases settled between the IDOC and current or former inmates. As to the collective actions at issue here, in agreement for full and complete settlement of all of his claims, the IDOC agreed that the Plaintiff would receive $13,000.00. (Exh. A, ¶ 1). This amount was explicitly "payable from appropriations made to the Indemnification Fund administered by the Illinois Department of Central Management Services pursuant to the State Employee Indemnification Act (5 ILCS 350/0.01 et seq.)." (Exh. A, ¶ 1). It was also "expressly agreed that the Defendants

in their individual capacities shall not be responsible for payment of any sum under this Agreement." (Exh. A, ¶ 2).

As noted above, this Court terminated all three of the actions pursuant to the settlement on June 30, 2015. The Settlement Agreement reflects that "[t]he claims at issue here have already been dismissed subject to the settlement memorialized in this Agreement." (Exh. A, ¶ 6). On July 20, 2016, Plaintiff Motion to Compel Settlement Payment in all three actions. (12 C 4569, Dkt. No. 60; 12 C 6063, Dkt. No. 114; 13 C 1889, Dkt. No. 40).

### C. Fiscal Year 2016 Budget Impasse and 2017 partial budget.

The State of Illinois was without a budget for the majority of fiscal year 2016 ("FY 2016"), and there was no appropriations measure enacted for FY 2016 appropriating funds to the Indemnification Fund. More recently, a limited "Stop Gap" budget encompassing FY 2016 and fiscal year 2017 ("FY 2017") was passed. However, the Stop Gap budget also made no appropriations to the Indemnification Fund. This matter was settled on June 30, 2015, and the Settlement Agreement was not signed by Plaintiff until September, two months into the budget impasse. Pursuant to the Illinois Constitution, "[t]he General Assembly by law shall make appropriations for all expenditures of public funds by the State. Appropriations for a fiscal year shall not exceed funds estimated by the General Assembly to be available during that year." Ill. Const. art. VIII, §2(b). Without a budget and an accompanying appropriations measure funding the Indemnification Fund, the State Comptroller cannot draw a warrant and present it to the State Treasurer to pay the settlement amount in this case. S*ee* 15 ILCS 405/9(c). As such, the settlement amount set forth in the Settlement Agreement cannot be paid without an appropriation to the Indemnification Fund.

3

## II. Argument.

### A. The IDOC Has Not Breached the Terms of the Settlement Agreement.

Plaintiff entered into the written Settlement Agreement with the IDOC subsequent to June 29, 2015 Settlement Conference with Magistrate Judge Valdez. The Settlement Conference itself was two days before FY 2016 began. It was well known to the parties, who were represented by able counsel, that there was not yet a budget in place for FY 2016. Further, pursuant to the express terms of the Settlement Agreement, the settlement payment is "payable from appropriations made to the Indemnification Fund administered by the Illinois Department of Central Management Services ("CMS") pursuant to the State Employee Indemnification Act." No appropriation has been made by the General Assembly to the Indemnification Fund.

Because there is currently no legal authority to make payment from the Indemnification Fund, and the Settlement Agreement specifically calls for payment to be made from that fund, there is no breach of the terms of the Settlement Agreement. In Illinois, "[s]ettlement agreements are construed and enforced under principles of contract law." *Gallagher v. Lenart*, 367 Ill.App.3d 293, 301 (1st Dist. 2006).[1] As such, the plain language of the contract determines the parties' intent. *Id.* "A written contract is presumed to include all material terms agreed upon by the parties." *Id.* Here, it is undisputed that the parties intended for the settlement amount to be paid from the Indemnification Fund. (Exh. A, ¶ 1). Further, pursuant to the negotiated settlement, the parties did not include any language specifying when payment was to be made, or indicating that time was of the essence. As such, the Court cannot impose such terms, and must "imply a reasonable time for performance." *Guel v. Bullock,* 127 Ill.App.3d 36, 42 (1st Dist. 1984). What constitutes a "reasonable time" is a factual question depending on the specific

---

[1] Per the Settlement Agreement, the "Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois, without regard to principles of conflict of law." (Exh. A, ¶ 9).

4

circumstances of each case. *Id*.; *Kane v. McDermott*, 191 Ill.App.3d 212, 218-219 (4th Dist. 2004).

The circumstances of the instant case dictate that there has been no breach of the Settlement Agreement. The parties were aware that there could be no payment until an appropriation was made to the Indemnification Fund, and there is no other language in the Settlement Agreement as to the timing of the payment. The IDOC still agrees that the amount set forth in the Settlement Agreement will be paid to Plaintiff once an appropriation is made to the Indemnification Fund, in compliance with the terms of the Settlement. As such, the IDOC did not breach the Settlement Agreement and there is nothing for this Court to compel.

Finally, if this Court were to order that the settlement amount be paid immediately out of a different state fund, this would change the terms agreed upon by the parties. "[A] court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included. A presumption exists against provisions that easily could have been included in the contract but were not." *Gallagher*, 367 Ill.App.3d at 301. For the reasons set forth herein, the Defendants ask this Court to vacate its December 3, 2015 Order.

      **B.**    **This Court's December 3, 2015 Order is Barred by the Eleventh Amendment.**

Even if the IDOC was in breach of the Settlement Agreement (which it is not), compelling payment without an allocation to the Indemnification Fund is barred by the Eleventh Amendment to the United States Constitution.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Pursuant to the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 662-663 (1974). Barring waiver or congressional override, the Eleventh Amendment "bars a damages action against a State in Federal Court." *Kentucky v. Graham*, 473 U.S. 159, 160 (1985). "The Eleventh Amendment was intended 'to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Rasche v. B.R. Lane*, No. 15 C 7918, Docket No. 70, p. 5 (Castillo, J.), *quoting P.R. Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993). (A copy of the Opinion is *Rasche* in attached hereto as Exhibit B). As such, the Eleventh Amendment gives the State immunity from suit. *Id*.

For purposes of the Eleventh Amendment, state agencies and state officials acting in their official capacities constitute the State itself. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 U.S. 907-08 (1991). The Eleventh Amendment protects these parties from federal court lawsuits seeking money damages. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) (noting that, at heart, of Eleventh Amendment is protection of the state's treasury); *see Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (holding that Eleventh Amendment barred order compelling State to reimburse plaintiffs for wrongfully withheld public aid benefits). Here, Plaintiff seeks to enforce a settlement agreement he entered into with the IDOC. It cannot be disputed that the IDOC is a state agency. *See* 20 ILCS 5/5-15 (2012).

By ordering the IDOC, and thus the State of Illinois, to pay settlement funds in this case now (as opposed to when there are allocations to the Indemnification Fund), the Court would be effectively ordering the State to make a payment to satisfy a debtor.[2] However, a court cannot "direct a state to make payments to resolve a private debt or to remedy a past injury to a private

---

[2] As set forth in Section I.C, above, this orders the State of Illinois to violate its own constitution.

party." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043 (7th Cir. 2013). Further, the Court would not merely be ordering the State to make a payment, but specifically instructing it where and how to allocate the funds: to the Indemnification Fund. Forcing state officials, "acting in their official capacities, to extract funds from the State's treasury for the ultimate benefit of the" plaintiff is barred by the Eleventh Amendment. *Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 884 (7th Cir. 2012).

Chief Judge Castillo has recently ruled on these same issues in the *Rasche* case, *supra*. In *Rasche*, the Plaintiffs were Illinois lottery winners who had sued the Illinois Department of the Lottery, among other agencies and officials, alleging that their rights were violated by the Department's delay in paying their lottery winnings. (Exh. B, p. 1). As in the instant case, the delay was the result of the absence of a State budget and necessary appropriations. The Court held that the Eleventh Amendment barred Plaintiff's claims against the State. Specifically, the Court provided that:

> At bottom, this is a contract dispute: Plaintiffs allege that they purchased winning lottery tickets and are entitled to payment under the state's lottery rules, but that the state breached its part of the agreement by failing to remit payment. Although Plaintiff attempts to "shoehorn" their dispute into one involving due process, it is clear that what they are seeking is the benefit of this "contract," *i.e.*, their lottery winnings. …
>
> Illinois lottery winners, understandably, wish to get paid. But this Court cannot disregard fundamental principles of federalism and long-standing rules prohibiting federal courts from interfering with the state's operation of its own treasury. Whatever an appeal of an argument that the state should pay its lottery winners (**and, indeed, all its creditors),** the Eleventh Amendment was a "swift and direct rejection" of the notion that federal courts have the power to compel states to comply with their financial obligations to private parties. For these reasons, Plaintiffs' claims against the Illinois Defendants, whether for damages or nominally seeking injunctive or declaratory relief, are all barred by the Eleventh Amendment.

(Exh. B., pp. 13, 14-15) (internal citations omitted)(emphasis added).

This Court should arrive at the same conclusion in this case. By "enforcing" this Settlement Agreement, the Court would be expediting a payment from the State of Illinois to a private individual. Further, since there is no current allocation to the Indemnification Fund, the Court would be ordering State to violate its own constitution. As set forth herein, the Eleventh Amendment bars federal courts from ordering a state to operate its treasury in such a specific way. As such, Defendants pray that this Court deny the Motion to Compel.

**WHEREFORE**, DEFENDANTS, prays that this Honorable Court deny Plaintiff's Motion to Compel Settlement Payment, and for any such other relief which this Court finds appropriate and necessary.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By: s/Lyle Henretty
LYLE K. HENRETTY
Assistant Attorney General
General Law Bureau
100 W. Randolph St., 13th Fl.
Chicago, Illinois 60601
(312) 814-3327

### CERTIFICATE OF SERVICE

I, Lyle Henretty, hereby certify that I have caused true and correct copies of the above to be sent via e-filing to all counsel of record on August 22, 2016, in accordance with the rules on electronic filing of documents.

/s/ *Lyle Henretty*